CEDAR RAPIDS WATER COMPANY, Appellee, v. THE CITY OF
                    CEDAR RAPIDS, Appellant.

**Cities and Towns**: POWERS OF CHIEF FIRE ENGINEER: *Water sup-
ply contract*. Pursuant to Code, section 716, authorizing cities
to organize a fire department, a city, by ordinances, provided
such a department, including a chief engineer, whose duties
were prescribed; giving him control of all city property and
employees provided in such department. The city contracted
with a water company to pay certain rent for certain hydrants
to be maintained by the company, with a specified pressure
during fires. An ordinance provided that the committee on
light and water should have charge of the water hydrants.
The chief engineer posted in the engine room of the water
company a notice to the company to carry a specified pressure
at the hydrants, which was much less than that required by
the contract. In an action to recover rent of the hydrants,
the city pleaded breach of the contract in failing to furnish
the required pressure; the plaintiff proved such notice of the
chief engineer, and compliance therewith, as a waiver of the
provision as to pressure. *Held*, that the chief engineer had no
authority to waive the terms of the contract; hence giving an
instruction that this notice might constitute a waiver of the
contract, was error.

*Same*. There was evidence that the committee on water com-
plained of the insufficieny of the water pressure in cases of
fires, and that the city refused to pay hydrant rentals unless
additional pressure was furnished; and defendant requested
an instruction that, if the jury found such facts, the plaintiff
would not be warranted in relying on the previous directions
of the fire chief. *Held*, that the court erred in refusing such
instruction.

NOTICE TO ENGINEER: *Estoppel*. Evidence of such notice, and of
plaintiff's compliance therewith was competent, as notice to
the city, through such engineer, of the amount of pressure
actually furnished, and as tending to show an estoppel or
waiver by the city.

*Plea and proof*. Where one issue was whether or not plaintiff had
furnished sufficient pressure to successfully extinguish fires, it
was error to exclude a question to defendant's fire chief as to
whether at the fires, during the period for which rent was
claimed, he had all the presssure needed.

Pleadings:  REPLY.   Where, in an action against a city to recover
on a contract for rental of hydrants, the city, in its answer,
alleged failure to perform the .contract, a reply alleging a
waiver of strict performance is authorized by Code, section
3576, providing that there shall be no reply unless some matter
is alleged in the answer to which the plaintiff claims to have
a defense by reason of some fact which avoids such matter.

*Appeal from Benton District Court.*—HON. OBED CAS-
WELL, Judge.

THURSDAY, MAY 29, 1902.

ACTION at law for the recovery of hydrant rentals.
From a verdict and judgment for plaintiff, defendant ap-
peals.—*Reversed.*

*John N. Hughes* and *Jamison & Smythe* for appellant.

*Chas. A. Clark & Son* and *William G. Clark* for
appellee.

DEEMER, J.—The plaintiff company was granted a
franchise for a system of waterworks in the defendant city,
and, by the terms of the ordinance granting the same, the
defendant city undertook to pay plaintiff the sum of $65
per year per hydrant for 178 hydrants located upon the city
streets.   Thereafter 50 additional hydrants were located,
and, as rent therefor, defendant agreed to pay the sum of
$50 per annum for each hydrant.   The rentals so provided
were to be paid quarterly, and certain conditions were
imposed, which will be hereinafter referred to.   This action
is to recover rentals from March 30, 1899, down to January
1, 1900.

The franchise contract was on the following (among
other) conditions:

"Sec. 9.   And that at all times, in case of fire alarms
at the pumping works, the said company shall cause a suf-
ficient pressure to be kept up at the fire hydrants in use,

to throw six streams of water simultaneously out of one and a quarter inch nozzles a distance of one hundred and fifty feet on the general level of the city, and one hundred feet on the highest ground in the city except at a time of unusual and unavoidable casualties. * * * That in the construction of said works the machinery and other fixtures used shall be of such a character and capacity as will furnish the necessary supply of water, excepting in time of unavoidable casualties as aforesaid, for domestic use and fire protection along said lines of main pipes."

"Sec. 13.      The city council of said city shall during the life of the franchise hereby granted, pass and enforce all ordinances, penal or otherwise, that may be necessary to carry out the provisions of this ordinance, and as are usual in such cases, to protect the rights and interests of said company, and shall also pass and enforce such ordinances as may reasonably be required to preserve and maintain the purity of the water from whence the supply is taken. And the city council shall have power and authority to pass all ordinances necessary to perform its duties and obligations contained in this ordinance."

Defendant pleaded utter and absolute failure of the company to comply with section 9 of the ordinance quoted, and also averred that during a large portion of the time plaintiff failed to furnish water fit for domestic use. Plaintiff, in reply, pleaded a waiver on the part of the defendant of any breach of the conditions imposed by the ordinance; that defendant, through the chief of its fire department had for many years, directed the pressure to be maintained in case of fire, and that plaintiff had in every respect complied with these directions; that defendant at all times of fire failed to have the use of water except for domestic purposes shut off, as agreed; and that it has at all times relied on the direction of defendant's chief of the fire department in case of fire,

and furnished pressure according thereto. Wherefore it insists that defendant has waived full compliance with the contract, and is estopped from asserting a breach thereof as a defense. Defendant moved to strike this reply on the ground, among others, that the matters therein set forth were not a proper subject of reply, but a departure in pleading, and that the facts therein alleged, if relied upon, should have been pleaded in the petition. This motion was overruled, and this ruling presents the first error assigned. Manifestly, the ruling was correct. The facts recited in the reply do not constitute a cause of action, either of themselves, or when connected with matters stated in the original petition. They simply avoided the matter alleged in the answer, and were properly pleaded in reply   Code, section 3576; *Jacobs v. Insurance Co.*, 86 Iowa, 149; *Dyer v. Insurance Co.*, 103 Iowa, 524; *Creston Waterworks Co. v. City of Creston*, 101 Iowa, 692.

II. Plaintiff was permitted to show that various chiefs of the fire department, from 1883 down to the time covered by this action, fixed the fire pressure, and posted in the engine room of the plaintiff company, and in the houses in which fire apparatus were kept, a card, of which the following is a copy: "Cedar Rapids Water Company: Please carry 100 pounds pressure for the following boxes: 5, 6, 7, 8, 12, 13, 14, 22, 23, 31, 42. All other boxes, 90 pounds pressure, unless otherwise ordered. Three taps of the bell is the signal for more pressure. By request of L. M. Ayres, Chief Engineer."

Bearing on this evidence, the trial court gave the following (among other) instructions:

"(23) The officers and authorized agents of the defendant city, acting in the interest of the city and its inhabitants, may waive a strict compliance with the contract with the plaintiff, and accept different works, performance, or pressure as and for that provided and specified in the contract, where the interests of the city are thereby

not materially injured, but are substantially preserved. If the defendant accepted the works erected by plaintiff, and received the water and pressure furnished by the plaintiff, and made no complaint to plaintiff, but, with full knowledge of all material facts in regard thereto, accepted the same as and for a substantial or full compliance or performance, then the same was a waiver of any other compliance."

"(25) If you find from the evidence that the defendant city, under its ordinance, elected a chief engineer, or chief of the fire department, and constituted him the chief executive of that department, and gave him supervision and control over the same, and at fires; and you further find that said chief of said department gave to the plaintiff instructions or directions as to the amount of pressure desired by the defendant in case of fire alarm, or at fire, or so posted a printed notice to that effect at the pumping station of plaintiff, and requested the same to be obeyed, and notified the plaintiff that, if a different pressure was desired, the same would be called for, and notification thereof given,—it would not be a breach of said contract, so as to defeat a recovery herein, if the plaintiff in other respects should be found entitled to recover, to in good faith follow and obey said directions and request, so long as they were not countermanded, annulled, or changed. If not given, or when not in force, the terms of the contract in regard to pressure, if not otherwise waived, would govern, and should be by plaintiff substantially complied with."

"(26) No particular words or form is necessary to constitute waiver or acceptance. An acceptance or waiver may be by words or acts, or, with full knowledge of all the material facts, such conduct as shows satisfaction therewith and assent thereto. Long silence, with such knowledge, and no objection and acceptance of benefits, and where such conduct is only consistent with acceptance,

and is so understood and acted upon, may be a waiver of any other construction or performance, and become binding upon the parties."

The giving of these instructions, and the rulings admitting evidence as to what was done by defendant's chief of fire department, are complained of. It is strenuously argued that these chiefs had no authority to waive the provisions of the contract, for that their powers were limited, and their acts in this respect not binding on defendant. The duties of these chiefs were prescribed by ordinances, from which we extract the following:

"Section 1. The fire department of Cedar Rapids shall consist of the chief engineer, who shall be elected in accordance with the provisions of the charter, and not more than eight firemen, including the foreman at the central station, and not more than six firemen, including the foreman, at each subordinate station except as provided in section 3 thereof."

"Sec. 4. Engineer to Devote His Time. The engineer shall devote his entire time to the service of the city, and shall not be absent from the city without permission of the mayor. He shall be the executive head of the fire department and shall have general charge of the property belonging to the city and connected with the fire department, and shall see that it is kept in good repair and ready for use at all times. He shall attend all fires which may occur in the city, and all orders given by him shall be implicitly obeyed by all members of the fire department. He shall have his headquarters at the central station and shall have authority to suspend or dismiss any member of the fire department. He shall whenever he has permission to be absent from the city promptly notify the foreman at the central station, and during any such absence the foreman at the central station shall be acting chief of the fire department; and his orders must be respected and obeyed

accordingly. The chief engineer shall present to the coun cil at its first regular meeting in March of each year, a complete report of the fire department for the previous year, and shall make such additional reports as may be required by the council."

Passed March 9, 1894.

"Section 1. That the fire department of the city of Cedar Rapids shall consist of a chief engineer, one or more assistant engineers, two or more fire policemen, with as many firemen as the number of engines and number and quantity of other fire apparatus belonging to the city may from time to time require, not exceeding forty men for each engine company, or thirty men for each hose, hook and ladder or bucket company, including officers.

"Sec. 2. The chief engineer shall be elected by the legal and qualified electors of said city, as other city officers are elected, on the first Monday in March of each year, and may appoint or discharge, by and with the consent of the city council, one or more assistant engineers, and one or more police firemen, and said engineer shall be responsible for all acts of the assistant engineers and firemen and fire police-men when acting under his directions. He shall be liable to such fines and penalties as the city council may from time to time determine. It shall be the duty of the chief en-gineer to exercise a constant supervision over the fire de-partment; he shall have the general charge of all property belonging to the city connected with the fire department, and shall see that the same is always kept in good repair and ready for immediate use; he shall, with the approval of the committee on fire department, order and procure such repairs as may be necessary, upon the engines or other fire apparatus; he shall have charge of all public cisterns and shall see that the same are at all times supplied with water and in proper order or condition to be used, he shall attend at all fires which may occur in the city, and all or-ders given by him to any assistant engineer, company or

fireman shall be promptly obeyed. He shall report semi-annually, to-wit: at the first regular meeting of the city council in March or September of each year, the condition of the engines, hose, hooks and ladders, and other apparatus belonging to the city, building or buildings in which they are kept, and also to recommend such additions, alterations and improvements to the same as he may deem expedient. He shall report to the city council the names of such members of the fire department as shall have disobeyed orders or neglected or refused to do their duty, and he shall also report monthly to the council for confirmation the names of such persons as shall have been elected members of the different companies. It shall also be his duty to see that the provisions of this ordinance are strictly enforced. In the absence of the chief engineer, it shall be the duty of assistant engineer highest in rank present to perform all the duties of the chief engineer.''

Passed July 29, 1870.

According to the revised ordinances of the city passed in the year 1898, the chief engineer had the following powers: "He shall be the executive head of the fire department and shall have general charge of the property belonging to the city and connected with the fire department, and shall see that it is kept in good repair and ready for immediate use at all times. He shall attend all fires which may occur in the city and all orders given by him shall be implicitly obeyed by all the members of the fire department. He shall have his head quarters at the central station and shall have authority to suspend or dismiss any members of the fire department.'' The laws of the state (Code, section 716) provide that "they [cities] shall have power to organize, keep and maintain a fire department and fire companies; provide engines, etc., and pay for the services rendered by members of the fire department at any fire.'' There was another ordinance providing

that "the committee on light and water shall have charge of all street lighting and all water hydrants, and, subject to the approval of the city council, they shall locate additional hydrants or change the hydrants whenever the same are ordered by the city council; they shall also have charge of auditing all bills for lighting and water rents and of all applications and repairs properly under their supervision." There was also a rule of the city council to the effect "that it shall be the duty of the committee on fire department to take cognizance of all matters pertaining to the fire department."

The exact claim made is that the acts of these chiefs on which plaintiff relies were beyond the scope of their authority, and therefore not binding on the city. "A waiver is a voluntary and intentional relinquishment of a known right. It implies an election by the party to dispense with something of value, or to forego some advantage which he might, at his option, have demanded or insisted upon. To constitute a waiver, therefore, the acts relied upon must have been voluntarily and intentionally done, with knowledge of the facts, and the party must have been in such a situation of freedom to choose that his relinquishment can fairly be said to be voluntary. What one does in a dilemma forced upon l i n by the default of the other cannot be counted upon as a waiver." Mechem, Sales, section 1071. The acts relied upon as constituting a waiver, when done by an agent, must have been with authority. But long silence, with knowledge and acceptance of benefits, without objection, may amount to a waiver, and in cases of ambiguity the acts of the parties under a contract may be received in order to arrive at its proper interpretation. But this knowledge, and the acts relied upon as constituting the waiver, or the proper construction of the contract, must be of one having authority from the corporation. As said in Reese, *Ultra Vires*, section 192, "Any person having no authority to act cannot by his conduct estop others

not responsible for his conduct. Accordingly, no estoppel
can ordinarily arise from the act of a municipal corpora-
tion officer done in violation of, or without authority of,
law. Every person is presumed to know the nature and
extent of the power of municipal officers, and therefore
cannot be deemed to have been deceived or misled by acts
done without legal authority. So a city will not be estop-
ped by the acts or promises of a committee of the city
council, or the acts of the city attorney, such committee
having no power to do the act which is sought to be effected
by estoppel." It may be that notice to defendant's en-
gineer or chief of the fire department of the amount of fire
pressure furnished by the plaintiff company would be
binding on the city, and that the evidence to which we
have referred would be admissible, as bearing upon ac-
quiescence by the city in the amount of fire pressure car-
ried, and tend to show an estoppel or waiver on its part,
but we find no authority conferred upon these officers
which would authorize them to waive the provisions of the
ordinance. We have quoted everything we can find in the
law or ordinances of the city conferring power upon the
engineer or chief of the fire department, and it will be
seen that there is nothing giving him or them any authority
over the waterworks, or power to fix the fire pressure. It
follows that, while the evidence relating to the conduct of
these officers was properly admitted in evidence as bearing
on the question of knowledge and acquiescence, instruction
No. 25, which, in effect, gave them power to waive the
provisions of the ordinance, was wrong, and evidently very
prejudicial to defendant. Appellee says that appellant
does not attack these instructions, but this is a manifest
mistake. Much of the argument is devoted to this point.

Further, it is claimed that the plea of waiver is not
that the fire chief alone did the acts relied upon, but that
defendant itself did them, and that the evidence admitted

was simply to prove a custom known to, and acquiesced in by, the defendant. Doubtless, this is a correct construction of the pleadings, and the evidence may properly have been received on this theory, but this does not obviate the objection to the instruction which we have condemned.

As sustaining our conclusions on this branch of the case, see *Seeger v. Mueller*, 133 Ill. 95 (24 N. E. Rep. 513); Throop, Public Officers, section 551; *Bonesteel v. Mayor, etc.*, 22 N. Y. 167; *Clark v. City of Des Moines*, 19 Iowa, 209; *Bond v. Mayor, etc.*, 19 N. J. Eq. 376; *City of Ottumwa v. Parks*, 43 Iowa, 119. The defendant asked the following instruction: "No chief of the fire department of the defendant city had any power or authority to arrange with the plaintiff for any less pressure in cases of fire, at the fire hydrants in use, than was specified in the contract; and such directions, if any, by any fire chief of the fire department of defendant, will not avail the plaintiff herein." This, or something like it, with proper qualifications as to acquiescence, etc., should have been given.

II. Defendant asked an instruction to the effect that if the jury found from the evidence that the chief of the fire department of the city caused to be printed and posted in the pumping stations of the defendant directions as to the amount of water pressure required in cases of fire alarm, and further found that, by an arrangement between the succeeding fire chiefs and the plaintiff, such directions were adopted and continued in force, but further found that, on or about the commencement of the period of time in controversy herein, the defendant, by the water and light committee of its council, complained to the plaintiff of the insufficiency of the water pressure in cases of fire alarms, and the defendant refused to pay plaintiff's bills for hydrant rentals unless additional water pressure was

furnished, then and in that case plaintiff would not be warranted in relying upon the previous directions of the said fire chiefs.  This instruction was manifestly correct, and, as there was some evidence in its support, it should have been given.  True, the evidence does not clearly distinguish between acts of the committee on lights and water and of the chairman of that committee, but we think there was enough to show that the acts were of the committee, as distinguished from those of the individual members thereof, and that, as we have said, the instruction should have been given.  The matter was referred to in the instructions given by the court, but not in that clear and comprehensive manner to which defendant was entitled.  We would not reverse on this ground alone, and refer to it at this time in order that the mistake may not be repeated on a retrial.  As sustaining our conclusions regarding the correctness of the instruction asked, see Mechem, Sales, section 1073; *Cahen v. Platt*, 69 N. Y. 348, (25 Am. Rep. 203).

IV.   Instructions 16 and 21 are not in conflict, as defendant contends.  They need not be set out, as to do so would serve no useful purpose.

V.   The court correctly stated the issues to the jury, and instructed that the burden was on plaintiff to establish the allegations of its reply.  Hence there is no merit in appellant's argument with reference thereto.

VI.   One issue in the case was whether or not "plaintiff had furnished pressure sufficient to successfully fight and extinguish fires."  One Cook, defendant's fire chief, was asked this question: "State whether or not at the fires you have detailed and recalled during the last nine months of 1899 you had all the pressure that was needed?"  Objection to the question was sustained.  It should have been overruled.  The witness was competent, and the inquiry was material.

VII.    That the court failed to separate plaintiff's claim into quarters, according to the contract, and did not specifically refer to defendant's liability for each quarter, even if erroneous, was prejudicial to plaintiff, and not to defendant, in that plaintiff's right to recover at all was made to depend upon performance of the contract or waiver during the entire time the hydrants were used by the city.

Some other matters are argued, but, so far as material, they are either disposed of by what has already been said, or are not of sufficient importance to demand separate consideration.

For the errors pointed out, the judgment must be, and it is, REVERSED.