[File No. 6070.]

MARIE R. WILLIAMS, Appellant, v. CITY OF FARGO, a Municipal Corporation, Respondent.

(247 N. W. 46.)

Opinion filed January 14, 1933. Rehearing denied March 6, 1933.

*M. A. Hildreth,* for appellant.

186

*M. W. Murphy,* for respondent.

*C. L. Young,* amicus curiæ.

Burke, J. In this action the complaint alleges, in substance, that the plaintiff is the owner of a lot in block 71, Ohmer's Subdivision to the city of Fargo. That in the spring of 1927, a petition was filed with the board of city commissioners of the city of Fargo, praying for the opening of a street, to be known as Twelfth Street North, approximately sixty feet wide running north and south, through and to occupy the west 58.2 feet of plaintiff's property and that in the year 1928 said proposed 12th Street North was opened, laid out, and designated as a public highway and street. That by the construction of said Twelfth Street North there was created, out of said subdivision, a new and separate block, consisting of the east 130 feet of said lots or

blocks, which said plots or blocks were thereafter bounded upon the north by Thirteenth Avenue North; on the south by Twelfth Avenue North; on the east by 11½ Street North; and on the west by the newly constituted Twelfth Street North, including plaintiff's property then remaining: the south 50 feet of the east 130 feet of said lot or block 71; that because of the reduced depth of the plot or block it became and was necessary to erect all buildings and houses thereon so as to face the same direction; that is to say, either upon said 11½ Street or the newly constructed Twelfth Street North. That on the 19th day of July, 1927, the city of Fargo granted to plaintiff a permit to erect a dwelling house facing on 11½ Street and plaintiff was ordered and directed not to face the same upon the said 12th Street North and was advised, assured, and promised that all buildings, thereafter erected in said newly constructed plot or block, would be required to face on 11½ Street. That there were at said time no buildings constructed in said plot or block facing Twelfth Street North and said plaintiff was further advised that under the zoning ordinance then in force and effect in said city of Fargo, buildings constructed, subsequent to plaintiff's said building, would be required to face in the same direction.

That during the month of July, 1927, the plaintiff obeying such direction and instruction and in pursuance thereof and believing and relying upon said assurance and promise, caused to be erected upon her said property a valuable dwelling house and garage, facing the east and upon and towards said 11½ Street. That, thereafter, the said Twelfth Street was opened and improved as a highway, and, that notwithstanding the orders and directions of the city of Fargo, and its promise and agreement and assurance, and, notwithstanding, the requirements of said zoning ordinances, said city of Fargo, disregarding plaintiff's protests, wrongfully, negligently, and contrary to its promise, agreement and directions, allowed, permitted and directed to be built upon and constructed upon said plot of ground upon the property therein adjacent to plaintiff's house, three certain dwellings, and permitted, allowed and directed the same to be constructed facing said 12th Street, so that the rear yards of said properties were adjacent and abutted upon plaintiff's front yard; that such construction of said buildings, because of the limited depth of such lots, brought plaintiff's front yard in direct contact with the rear yards of said buildings and rendered

plaintiff's property unsightly and unattractive and greatly depreciated the dwelling, rental and sale value of the plaintiff's property.

For a second cause of action the plaintiff alleges, that upon the express order and direction of the city, her building faced $11\frac{1}{2}$ Street, and that the city, thereafter, proceeded to open and lay out said 12th Street and for such purpose sought to purchase from the plaintiff a portion of her said property, to wit: the west 58.2 feet thereof, and in order to procure a conveyance of said property for a nominal sum or a sum not in excess of the value of the property so taken and without paying any damages, which might accrue to the remainder of plaintiff's said property and as an inducement for such conveyance, represented and warranted to plaintiff that no buildings would be permitted to be erected in said plot or block of ground between Twelfth and Thirteenth Avenues North, facing upon said 12th Street; that the plaintiff believed and relied upon said representations and warranties and being induced thereby did convey to said city 58.2 feet of her property, which conveyance was made for a nominal sum not in excess of the separate value of the property so taken and without payment to the plaintiff for the damages accruing to her remaining property by reason of the opening of said street and the construction of dwellings and buildings facing on said Twelfth Street North. That, thereafter, the said city opened up and laid out said Twelfth Street North and permitted and allowed certain buildings to be constructed between Twelfth and Thirteenth Avenues North, in which plaintiff's said property was located, so that their rear yards were adjacent to plaintiff's front yard, thus damaging and injuring the remainder of plaintiff's said property not so taken for highway purposes, rendering the same unsightly and unattractive and greatly diminished and depreciated in value for dwelling, rental and sale purposes.

For a third cause of action the plaintiff alleges, that she constructed a valuable dwelling upon said property facing $11\frac{1}{2}$ Street North and that, thereafter, the city opened up and laid out the said 12th Street North and unlawfully allowed and permitted and caused certain buildings and dwellings on said plot or block between Twelfth and Thirteenth Avenues North, in which the plaintiff's said property is now located, to be constructed, facing on said Twelfth Street North, so that their rear yards were adjacent to plaintiff's front yard, thus creating a continuing

nuisance to plaintiff's annoyance, and discomfort, and to the irreparable injury of the plaintiff, greatly diminishing the value of plaintiff's said property for dwelling, rental or sale purposes.

To the complaint there is an answer, which admits the opening of Twelfth Street, and alleges that the plaintiff had due and legal notice thereof, but did not protest; that the Board of city commissioners, as such board of city commissioners was the only agency authorized by law to so bind and conclude this defendant in the premises and such board of city commissioners has acted only in exercise of its powers, through a meeting of the board of city commissioners duly and regularly held, and the action, thereof, duly and regularly taken by proper vote and set down and recorded by proper record of such meeting; that if the city auditor, city attorney, city engineer, superintendent of building, or one or more of said members of the board of city commissioners, made representations, promises or assurances to this plaintiff, the same were ultra vires and void and not binding on the defendant.

The case came on for trial on December 1st, 1931. There was introduced in evidence, the minutes of the commissioners of the city of Fargo, under date of April 27, 1927, showing the petition to open Twelfth Street was filed. Under date of June, 1929, the commissioners' minutes show the following: "There having been presented to the Board the fact that on 11½ Street North between Twelfth and Thirteenth Avenues, there are houses facing East, also within the same bounds there are houses facing West and new houses are being constructed to face West; it appearing that a rather unsatisfactory condition will develop, Commissioner Lynner moved that the question be referred to the Superintendent of Building, the city engineer and the city attorney for a report." On July 5, 1929, the commissioners had the matter of the opening and alteration of various streets in Ohmer's Subdivision up for consideration and on motion that all actions looking to the opening or alteration of any of the streets in Ohmer's Subdivision were postponed until the property owners in said district petitioned for such opening or alteration. On July 16, 1929, there appears the following minutes: "The Board having on the 8th instant set for hearing at this time the question of the fronting of houses on 11½ and Twelfth Streets North between Twelfth and Thirteenth Avenues a

delegation of citizens now appeared before the Board the following of whom addressed the Board in support of fronting houses on $11\frac{1}{2}$ Street if the houses are between $11\frac{1}{2}$ and Twelfth Streets to-wit: D. I. Brindle, Mrs. Roy Williams, Mrs. F. J. Phillips, and T. T. Woodward. Those in favor of fronting houses in said location on Twelfth Street were Dr. John Lee Coulter." On July 28, 1929, the minutes show that the city engineer was directed to prepare and submit to the Board plans and specifications and estimates of the cost of opening 11th Street North to a width of 80 feet between 12th and 14th Avenues North and of narrowing $11\frac{1}{2}$ Street North to a width of 20 feet between 12th and 15th Avenues North including the moving or turning of existing houses so as to face on either 10th, 11th or 12th Streets, or Avenues already in existence. On November 25th, 1929, the minutes show that "The Board having taken steps looking to the opening of 11th Street North and the superintendent of building having reported that heretofore application was made by him for a permit to construct a building facing on $11\frac{1}{2}$ and that after having searched the records he could find no reason of record why he should refuse such permit." On motion the superintendent was directed to issue no permits for buildings to front on $11\frac{1}{2}$ Street and that the permit heretofore issued to R. T. Clarey be revoked. The board met on December 16, 1929, and directed the Superintendent of Building to issue no permits for buildings to front on $11\frac{1}{2}$ Street between 12th and 15th Avenues pending the solution of the difficulties which exist. On November 24, 1930, Attorney W. H. Shure, representing property owners on $11\frac{1}{2}$ Street appeared before the Board to hear the report of the city attorney, who reported that he "investigated the proceedings of the City in reference to opening 12th Street North . . . and (had) considered the application for the opening of 11th Street and the assessing of damages which has accrued to property owners along $11\frac{1}{2}$ Street due to a change of front because of the opening of 12th Street and the possible opening of 11th Street; he finds no legal (authority) for the recovery of damages at this time due to the opening of 12th Street North; that he is unable to find legal authority for assessing the cost of turning houses so as to face differently and advises that the commission take no action in the matter." On April 27th, 1931, W. H. Shure again appeared before the board representing "owners of lots interested in the condi-

tion which has been produced on $11\frac{1}{2}$ Street North by the opening of 12th Street and by the fact that some of the houses face one way and the house next to them may face in the opposite direction" and the front yards and back yards are side by side. "Commissioner Anders moved that on May 18th the City Auditor bring before the Board all the available records bearing on this subject as well as records from the office of superintendent of building." On May 18, 1931, W. H. Shure appeared in behalf of Mr. and Mrs. Williams; Mrs. Phillips and other property owners interested were present. "The Board was asked to take some action which would result in payment of damages and expenses incurred in turning houses around to correct the present situation where houses are faced in different directions, and some houses are faced on back yards of other property. It was the opinion of the City Attorney that the city was not liable for such damages. After a lengthy discussion . . . in which all interested took a part, Mr. Anders moved that a district be created for the purpose of arriving, if possible, at the amount of damages, if any the city may be liable for." On June 15, 1931, "Mr. Shure appeared before the Board in behalf of a number of persons asking the City of Fargo to pay to them damages resulting from the opening of $11\frac{1}{2}$ Street North. An opinion by the City attorney, holding there was no authority in law for the payment of such damages out of the city funds, was read." On motion the commissioners accepted and approved the opinion of the city attorney as read. Commissioner Black voted no making the following statement: "I vote 'no' for the reason that a personal investigation of the situation leads me to believe that possibly some former city commissioners agreed to consider the matter of damages favorably on behalf of the aggrieved, and that many property owners have been damaged to a considerable extent, and that the city of Fargo at least acquiesced by allowing buildings to be erected without restriction, and later establishing and opening a street through what had formerly been an alley. I therefore believe the city of Fargo is liable for damages resulting to the residents affected."

On June 27, 1927, Mr. Shure, who was then city attorney, and George C. Hoenck, commissioner of streets, made a report to the Board of City Commissioners in which appears the following language: "We fully realize a problem presents itself relative to the facing of houses

on both 11½ and 12th Streets." This report relates to the purchase of the land for the opening of the street by condemnation proceedings. This report was introduced in evidence as plaintiff's exhibit "B." The permit issued to the plaintiff to build on 11½ Street is dated July 19, 1927, and the estimated value of the building as stated in the permit is $9,000 and it was introduced in evidence as plaintiff's exhibit "D." In connection with this permit the Superintendent of Building in the City of Fargo, George W. Hargrave, testified that he issued the permit to and told Mr. Williams (plaintiff's husband) that he (Williams) would have to face his building on 11½ Street. "I instructed him as building inspector of the city that he would have to face his house on 11½ Street." He was asked: Q. "Upon what did you base your right to give that instruction?" A. "The zoning ordinance of the city." Q. "The zoning ordinance required that building to be constructed that way?" A. "Yes, at that time." Q. "There was another building in there at that time facing on 11½ Street?" A. "Yes." Q. "The only building in the block already faced on 11½ Street, did it not?" A. "Yes sir." Q. "And under your interpretation of the zoning ordinance, you directed that future buildings would have to be faced that way?" A. "Yes sir, at that time." There was a modification of the plat of the district, which the zoning ordinance regulates, after they had cut 12th Street through. After 12th Street was cut through, there was only 130 feet left in that block, from street to street, that the zoning ordinance then permitted them to build in the opposite direction. Nobody gave him any instructions at that time but did later. He had instructions that any building permits that were issued on 11½ Street or in that district, on the west side of 11½ Street or the east side of 12th Street, that they were to face only upon 11½ Street. The instructions came through the city auditor, from the city commission; that being the usual method of conveying the city commission's instructions. The zoning ordinance referred to was introduced in evidence as plaintiff's exhibit "H," § 19 of which is entitled "Enforcement and Administration" and provides that it shall be the duty of the superintendent of building and other administrative officers charged with the enforcement to see that the provisions of this ordinance are properly enforced and the construction of all buildings as regulated by the act and under the supervision of the superintendent. It further appears from the

testimony of the superintendent of building that at the time of issuing the permit, there was no 12th Street and 11½ Street was the only street upon which plaintiff could face her house. He anticipated that she would want to face it on 12th Street. He knew that it was proposed to open up 12th Street and that was why he told her to face it on 11½ Street. Plats of Ohmer's Subdivision were introduced in evidence.

Mr. George Hoenck, who was called as a witness, testified that he had been a member of the board of city commissioners of Fargo from 1924 to 1928 and was commissioner of streets and sewers and directed the opening of new streets and the alteration and modification of streets and highways; was familiar with the plat known as Ohmer's Subdivision before the opening of 12th Street North and was present when it was considered. Mrs. Williams, Mrs. Phillips and Mr. Platt and other residents appeared before the board and discussed the question of the opening of 12th Street. They appeared many times and he knew that one of the principal objects of the visit by them was the opening of 12th Street and whether the buildings would face upon 11½ Street or upon 12th Street. Prior to June 1, 1927, there had been a discussion and consideration of that question between this plaintiff Mrs. Williams, and Mrs. Phillips and others and the board of city commissioners. Q. "Mr. Hoenck, I will ask you whether or not, during the meetings of the board of city commissioners that you have referred to as taking place, when this plaintiff, Mrs. Williams, and Mrs. Phillips, and Mr. Platt, and others living on Ohmer's Subdivision were present, at some of the meetings, or one of them, during the year 1927, prior to the time that you made your report of June 1st, 1927, the question of whether or not houses constructed in the block between 12th Avenue North and 13th Avenue North, and 11½ Street and the proposed 12th Street, would be faced in one direction, was discussed; and whether or not the Board, while in session, stated, promised and agreed with this plaintiff and the other persons, that houses would only be faced in one direction in that particular block, after 12th Street was opened?" To this question there was an objection on the ground that "it calls for an oral statement alleged to have been made by individual members of the Board, while the Board was in session. You are referring to oral

statements?" Mr. Francis Murphy: "Yes, certainly." After argument the court sustained the objection.

Mr. Francis Murphy, attorney for the plaintiff then made an offer of proof as follows: "The plaintiff offers to prove, by the witness George Hoenck, upon the witness stand, that at various meetings of the board of city commissioners of the defendant city, in session in the city hall, at which he was a member of the board personally present, and participated therein, the plaintiff and other property owners in the vicinity of the proposed 12th Street, during the year 1927, subsequent to the 20th day of April, 1927, it was agreed, stated and represented, by the board of city commissioners to this plaintiff, prior to the time that she gave a deed to the city of a portion of her property for the construction of said street, that buildings in the block in which her property was located, to wit: that block bounded on the south side by 12th Avenue North and on the north by 13th Avenue North, and on the east by 11½ Street, and to be bounded on the west by the proposed 12th Street North, would be permitted to face in only one direction. That these promises, agreements, representations and statements were made by such board and the individual members thereof, while in formal session, and in the presence of and to the plaintiff and others interested, prior to the time of the construction of plaintiff's house, prior to the time of the giving of a deed by the plaintiff, as herein mentioned. We make that formal offer of proof, by this witness now on the stand." To which offer there is an objection which is sustained. The plaintiff was then called as a witness and testified that immediately after securing a permit in July, 1927, she began the building of the house which was finished in October, 1927. A duplex house, quite a large building, built with the intention of selling, has six rooms on one side and five on the other, built of stucco, brick steps, built of the finest material and cost between eleven and twelve thousand dollars. Q. "Were there any directions given you by the building commissioner as to what direction you were to face that building?" A. "Yes." Q. "What were they?" To this last question there is an objection on the ground that the representations or instructions of the superintendent of buildings with respect to the situation which existed prior to the opening of 12th Street and prior to the action of the city through its board of commissioners with respect to 12th Street, are wholly immaterial. Objection sus-

tained. An offer of proof was made as follows: "We make an offer of proof, to show that on the 19th day of July, 1927, at the time of the issuance of permit, Exhibit 'D,' this plaintiff was instructed and required, by one George Hargrave, then superintendent of buildings, or building inspector, of the city of Fargo, who issued the permit, that she could not face her proposed building upon the proposed 12th Street North, but would be required to face the same upon $11\frac{1}{2}$ Street," which objection was sustained and the witness was shown plaintiff's exhibit "J," a series of photographs taken, showing the condition as it exists and showing buildings fronting on 12th Street, the back yards facing on $11\frac{1}{2}$ Street opposite plaintiff's front yard. The plaintiff continuing her testimony stated that there were two or three or four meetings that she remembered quite distinctly with the commission concerning the proposed 12th Street. The meetings were held in the city hall. The commissioners were all present at regular sessions. Others interested were also present at the meetings and several times before she got the permit to build. The opening of 12th Street was first discussed and then published and as soon as the publication came out they immediately went up in a body to protest, the several owners of property to be affected by the opening. They went up several times and several times had discussions with the members of the board while they were in session, in which all members of the board participated with Mrs. Williams and others. Q. "Well, you may state whether or not, during those discussions, statements or representations were made by the board of city commissioners, all of the members participating, that buildings within the block in which your property was situated would all be required to face in one direction?" To this question an objection was sustained and the following offer of proof was made: "We make an offer of proof, on the part of this witness, that at the various discussions and meetings prior to the time the permit in question was granted, the board of city commissioners, and each and all of the individual members thereof, while in formal session, stated and represented to this plaintiff, and other interested property owners then present, that upon the opening of 12th Street North, all owners of property within the block in which plaintiff's property is situated would be required to construct houses or dwellings facing in the same direction," and to this offer of proof an objection was sustained. Continuing her

testimony the plaintiff states that on the 11th day of August, 1927, she gave a deed for the rear 58.2 feet of her lot to the city for $863 for highway purposes, which was paid. (Right of way of 12th Street over plaintiff's property.) Q. "Now, at the time, and prior to the time, that you gave the deed, were you relying upon the representations and statements of the board of city commissioners that buildings within the block in which your property was situated would all be required to face the same direction?" An objection to this was sustained. Plaintiff continues: "I received from the city only $863." Q. "If you had not relied upon the statements and representations that you testified to, would you have given the deed for the amount in question?" An objection to this question was sustained and an offer of proof was then made in the precise language of the question, to which an objection was sustained. Plaintiff continues stating that at the time she built they also had one cottage facing $11\frac{1}{2}$ Street. No other buildings in the block. The cottage was sold to Dr. Coulter and he altered it so that it faces on 12th Street. Q. "Did you go before the city commission to protest against it?" To this question an objection was sustained. There was an offer of proof made as follows: "We make an offer of proof, that at the time of the alteration of the cottage in question, and the facing of it to 12th Street, towards the west, the plaintiff went before the city commission of the defendant city, and protested against the permit granted for that purpose." To this offer an objection was sustained. At about the same time two other cottages were built facing 12th Street and directly opposite the plaintiff's house. Q. "Did you make the same protest to the city commission?" To which question an objection was sustained and an objection to an offer of proof was sustained. Q. "Mrs. Williams, as it now stands do the back yards of these cottages run right along the front yard of your place?" A. "Yes." Q. "And garages?" A. "The garages are very conspicuous." Q. "Clothes lines?" A. "Everything is very bad. The pictures really do not do justice to the reality."

At the close of plaintiff's testimony the defendant moved "to dismiss the action upon the merits, upon the grounds stated in the general objections, in connection with the evidence of Mr. Hoenck, and also on the grounds stated in the motion to dismiss." The motion was granted and from a judgment of dismissal of said action on the merits and

from an order denying plaintiff's motion for a new trial, the plaintiff appeals.

Appellant's first contention is, that the court erred in granting the defendant's motion for a dismissal of the case on the merits, when there had been an objection to the granting of such motion by the plaintiff. The motion, as made by the defendant, was not a motion for a directed verdict, but a motion to dismiss and the inclusion in the motion of the phrase "on the merits" does not add anything to the motion or the judgment entered thereon, if the court had no authority to grant a dismissal on the merits.

Chapter 133 of the Session Laws of 1921 provides: "When at the close of the testimony any party to the action moves the court to direct a verdict in his favor, and the adverse party objects thereto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request." The motion was not made under this section as it was not a motion for directed verdict. It must have been made under § 7597, Compiled Laws, 1913, which provides: "A civil action may be dismissed, without a final determination of its merits, . . . when upon the trial and before the final submission of the case, the plaintiff abandons it, or fails to substantiate or establish his claim, or cause of action, or right to recover."

If the plaintiff fails to establish a claim the court could, on the motion, dismiss the case without a final determination, but had no authority to dismiss it on the merits. Schoening v. Smith, 59 N. D. 592, 231 N. W. 278. If, upon the whole case, however, it appears from the proof admitted and the proof offered, that the plaintiff has a legal claim against the city, then, of course, it was error to dismiss the action at all.

This is an action against the city to recover damages to private property in opening a street and in regulating the construction of buildings thereon. When the notice of the opening of the street was published and before the plaintiff built her house, being anxious to know whether the houses built in the block, which would be established by the opening of 12th Street, would face on 11½ Street or on 12th Street, she with others appeared before the board of commissioners at regular meetings several times protesting against the opening of 12th Street unless the houses built in the new block would all face the same street. At such

meeting the members of the board promised and agreed that all buildings built after the opening of 12th Street would face one way. In addition to the promise made by the board, the superintendent of building, under the zoning act for the city of Fargo, required the plaintiff to build her house facing 11½ Street. After she and others built their houses on 11½ Street, John Lee Coulter sought a permit to build on 12th Street. A hearing was had and after the city attorney had reported that the city was not liable for damages resulting to the property by reason of the granting of permits to build and the building of buildings on 12th Street, the Board then, according to the record, granted permits to build on 12th Street, and ordered the superintendent of building to issue no more permits to build on 11½ Street and revoked a permit previously granted to one Clarey, with the result that the back yards of those who built on 12th Street are immediately opposite the front yard of the plaintiff.

There is no denial that the plaintiff is damaged. Respondent contends, however, that the agreements between the members of the board and the plaintiff were oral and not by ordinance or resolution; that the members of the commission were not authorized by law to make any such agreements with the plaintiff either orally or in writing or by resolution or ordinance. Appellant contends that in the opening of 12th Street and the regulation of the building of buildings upon 11½ Street and 12th Street the city has taken and damaged her property without just compensation; that in the taking of her property she is entitled not only to the value of the property but to any damages resulting thereto by reason of the taking thereof and that if the defendant had required all the buildings built in said block to face on 11½ Street, according to its contract with the plaintiff, there would be no damage.

Under the Constitution and statutes private property cannot be taken or damaged for public use without just compensation and if property has been taken from the plaintiff for a public use she is entitled to recover the value of the property and any and all damages, whether the damage be direct, as when caused by trespass or physical invasion of the property, or consequential, as in the diminution of the market value. N. D. Const. § 14; Compiled Laws, 1913, § 8202; Chicago v. Taylor, 125 U. S. 161, 31 L. ed. 638, 8 S. Ct. 820; Rigney v. Chicago, 102

Ill. 64; O'Brien v. Philadelphia, 150 Pa. 589, 24 Atl. 1047, 30 Am. St. Rep. 832.

The plaintiff deeded the right of way on 12th Street to the defendant city on the 11th day of August, 1927, and was paid, at that time, the agreed value of the property taken. There was no consequential damage from the opening of the street at that time and none was claimed by the plaintiff until two years later, when houses were built in the block facing 12th Street, with their back yards adjacent to the front yard of the plaintiff.

From the many references in the record the matter relating to the buildings facing on $11\frac{1}{2}$ Street and on 12th Street showing that the matter was before the commission many times and that the commission even authorized the city engineer to determine the cost of moving the buildings on $11\frac{1}{2}$ Street around so as to face on 12th Street and showing an apparent intention of making such change, until the commission was advised by the city attorney that there was no legal liability chargeable to the city, taken together with the offers of proof it must be and is conceded that there was an agreement between the city commissioners and the plaintiff that when 12th Street was opened all buildings would be made to face in the same direction.

It is well settled that a city is not bound by the acts of its officers when there is no authority in law for the act. A contract of a municipal corporation is ultra vires when the corporation has no power under the existing law under any circumstances to enter into such a contract. An ultra vires contract is wholly void and no recovery can be had against the municipality thereon. The municipality cannot be estopped to deny the validity of the contract and no recovery can be had on an implied contract. 3 McQuillin, Mun. Corp. 2d ed. § 1274; Driftwood Valley Turnp. Co. v. Bartholomew County, 72 Ind. 226; South Covington Dist. v. Kenton Water Co. 117 Ky. 489, 78 S. W. 420; Mobile v. Moog, 53 Ala. 561; Rogers v. Omaha, 80 Neb. 591, 114 N. W. 833; Schneider v. Menasha, 118 Wis. 298, 95 N. W. 94, 99 Am. St. Rep. 996; Balch v. Beach, 119 Wis. 77, 95 N. W. 132; Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A.(N.S.) 793, 120 Am. St. Rep. 621; Westminster Water Co. v. Westminster, 98 Md. 551, 56 Atl. 990, 64 L.R.A. 630, 103 Am. St. Rep. 424; Cedar Rapids Water

Co. v. Cedar Rapids, 117 Iowa, 250, 90 N. W. 746, id. 118 Iowa, 234, 91 N. W. 1081; McAleer v. Angell, 19 R. I. 688, 36 Atl. 588.

Could the city commission make a contract with the plaintiff by the terms of which all lot owners in said block (including those not parties to the contract) would be required to face their buildings on 11½ Street? We have carefully examined the zoning ordinances of the city of Fargo and we do not find any provisions in the ordinance which would authorize the city to enter into such a contract nor do we find any provisions in the enabling act, chapter 175, Laws of 1923, authorizing the city to pass an ordinance requiring the owners of lots to face their buildings on a certain street.

Chapter 175, Laws of 1923, known as the "zoning enabling act" provides that cities may establish zoning districts and restrict the height, number of stories and size of buildings, the percentage of the lot occupied, the size of the yards, courts and other open spaces and the zoning ordinance adopted by the city of Fargo has not gone beyond the authority authorized in the enabling act.

There is not a word in the ordinance or in the statute which gives the city authority to require the owners of lots to face buildings in any direction or upon any street. We need not and do not pass upon this question as neither the city nor the legislature has given such power. Clearly the city commission made a contract with the plaintiff which it had no authority to make or to enforce. The making of such contract was beyond the power of the city commission. The powers of a city are derived from the charter or act of incorporation. The city commissioners are only agents of the city, acting under defined powers, limited and restricted by law and if they exceed their authority, the corporation is not liable. The rule is that persons dealing with such officers must at their peril ascertain the scope of their authority. McQuillin, Mun. Corp. (2d ed.) §§ 519, 1268; North Fargo v. Fargo, 49 N. D. 597, 192 N. W. 977; Stern v. Fargo, 18 N. D. 289, 122 N. W. 403, 26 L.R.A. (N.S.) 665; Weeks v. Hetland, 52 N. D. 351, 202 N. W. 807; Bosard v. Grand Forks, 13 N. D. 587, 102 N. W. 164; Keller v. Wilson, 90 Ky. 350, 14 S. W. 332; Burns v. New York, 3 Hun, 212; Jacobberger v. School Dist. 122 Or. 124, 256 Pac. 652; McCormick v. Hanover Twp. 246 Pa. 169, 92 Atl. 195.

It is true that the superintendent of buildings or building inspector

of the city of Fargo stated that, acting under the zoning ordinance of the city of Fargo, he required the plaintiff to face her building on 11½ Street, but the zoning ordinance does not give him any such authority and the city is not bound by the act. The opening of 12th Street is not the cause of plaintiff's damage. The cause of plaintiff's damage is the building of buildings facing 12th Street, with their back yards adjacent to plaintiff's front yard by other lot owners in the said block, and the failure of the City Commission to comply with its contract with the plaintiff to require other lot owners in said block to build their buildings facing 11½ Street; but since the city commission had no authority to enter into a contract which it could not enforce, by requiring the other lot owners to build their houses facing on 11½ Street, there can be no recovery in an action against the city and the judgment and order denying a new trial must be and are affirmed.

NUESSLE, Ch. J., and BIRDZELL, CHRISTIANSON and BURR, JJ., concur.